**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK BOYKIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-4109 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| JUVENILE JUSTICE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

Mark Boykin worked as a youth supervisor at the Illinois Department of Juvenile Justice ("IDJJ") for over 25 years. He had shoulder problems, and took medical leave for an injured rotator cuff. When he came back to work, he received an unpleasant surprise.

For whatever reason, IDJJ ran a background check on him. And it made a troubling discovery. IDJJ learned that Boykin allegedly had committed a sexual crime in 1995, over 25 years earlier.

That discovery led to an immediate suspension. IDJJ informed Boykin that he would be fired, and that he needed to resign. So he did.

Roughly six months later, the Department of Children and Family Services dropped the decades-old allegation of sexual misconduct. The dismissal cleared his name, but it did not lead to Boykin getting his job back.

Boykin responded by filing suit. He alleges that IDJJ showed him the door because of his disability, not because of the charge of sexual misconduct. He brings a discrimination claim

under the Rehabilitation Act, as well as a due process claim and a retaliation claim. IDJJ, in turn, moved to dismiss.

For the reasons stated below, the motion to dismiss is hereby granted.

## Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Mark Boykin worked as a Juvenile Justice Specialist for the Illinois Department of Juvenile Justice for over 25 years. *See* Second Am. Cplt., at ¶ 1 (Dckt. No. 35). IDJJ hired Boykin in 1996 as a youth supervisor, and he worked in three different divisions during his quarter-century at IDJJ. *Id.* at ¶¶ 10–11. Boykin was part of a union, and a labor agreement governed his employment. *Id.* at ¶ 15.

Boykin's "job was to supervise, mentor, counsel, protect, write disciplinary reports, transport inmates to scheduled destinations, write behavior reports and make sure the youths reach their goals to achieve parole." *Id.* at ¶ 1. IDJJ entrusted Boykin with the significant responsibility of overseeing youth in state custody.

Sometimes his job required sensitive tasks. For example, Boykin "engage[d] in strip searches of juveniles and overs[aw] showering of juveniles." *Id.* at ¶ 21.

Boykin has a rotator-cuff injury on his right shoulder, which forced him to take medical leave multiple times between 2016 and 2021. *Id.* at ¶¶ 14, 16. The injury required three surgeries. *Id.* at ¶ 14. On some occasions, Boykin took disability leave. *Id.* at ¶ 16. Boykin

2

worked for more than 1,250 hours in the year before taking medical leave, which Boykin states made him eligible for medical leave under the federal Family and Medical Leave Act ("FMLA"). *Id.* at ¶¶ 3, 17.

Around October 2021, Boykin took medical leave again. *Id.* at ¶ 18. He was pressured to return to work as soon as possible. *Id.* Boykin returned to work around October 18, 2021, and he requested "light duty." *Id.*

The day after Boykin returned to work, IDJJ ran a background check on him. *Id.* at ¶ 19. The background check indicated that Boykin had allegedly committed a sexual crime in 1995. *Id.* The second amended complaint does not offer very many details about the nature of the alleged sexual crime.

That allegation came out of the blue. Before then, Boykin had performed "decades of employment with a clear background check." *Id.* The complaint does not reveal why prior background checks failed to turn up the allegation from 1995.

The information in the background check came from the Department of Children and Family Services ("DCFS"). *Id.* at ¶ 19 n.1. DCFS had placed Boykin's name on the State Central Register, a "confidential list of persons who have been found to be indicated perpetrators of child abuse and/or neglect." *See* Defs.' Mem., at 6 n.2 (Dckt. No. 37) (quoting *Hearings and Appeals,* Illinois Department of Children and Family Services, https://dcfs.illinois.gov/about-us/hearings-and-appeals.html); First Am. Cplt., Ex. A, at 4 (Dckt. No. 22-1).

It is unclear whether DCFS treated the allegation as substantiated. *Compare generally* Second. Am. Cplt. (Dckt. No. 35), *with* Defs.' Mem., at 6 (Dckt. No. 39) (citing First Am. Cplt., Ex. A). Adding to the mystery, Boykin's EEOC complaint suggests that the background check showed a *conviction*, not merely an allegation of misconduct. *See* EEOC Charge of

Discrimination, at § III.B.1 (Dckt. No. 22-1, at 4 of 5) ("I am an individual with an erroneous conviction record as I was never arrested or convicted of any crime. Nevertheless, my background check erroneously shows a conviction.").

A suspension soon followed. On October 21, 2021, IDJJ's Superintendent, Olukayode Idowu, suspended Boykin. *See* Second Am. Cplt., at ¶ 20 (Dckt. No. 35). The human resources department informed Boykin and the union that Boykin would be fired, and that he needed to resign immediately. *Id.* at ¶ 22.

Boykin believes that the proffered reason was pretextual. In his view, IDJJ suspended him and forced him to resign because it did not want to accommodate his disability from the rotator-cuff injury. *Id.* at ¶ 34.

Boykin didn't want to resign because he was coming up on 30 years at IDJJ. *Id.* at ¶ 23. If he reached 30 years, he could maximize his pension benefits. *Id.*

About a month later, Thomas Hurley, IDJJ's Assistant Superintendent of Operations, issued a memorandum that determined that Boykin had committed misconduct and had violated IDJJ standards. *Id.* at ¶ 24. Based on the information in the background check, the memorandum stated that Boykin had "*demonstrated conduct unbecoming a State Employee when he performed an act of sexual penetration to a minor*." *Id.* (italics in original).

On December 22, 2021, Boykin resigned in lieu of termination, "fearing he would lose his pension based on IDJJ's threats and pressure to resign." *Id.* at ¶ 26.

But that's not the end of the story. In June 2022, DCFS dismissed the allegation of a sexual crime and removed Boykin's name from the State Central Register. *Id.* at ¶ 19 n.1. He was never arrested for the alleged sexual misconduct. *Id.*

Again, it is unclear why DCFS dismissed the allegation.  Parts of the story remain untold, shrouded in mystery.

The complaint does not reveal whether the allegation existed in DCFS records before the background check on October 19, 2021.  The complaint does not say whether Boykin knew about the record's existence.  And the complaint does not address whether Boykin played any role in removing the allegation from the DCFS records.

Boykin notified IDJJ in June 2022 that DCFS had removed the "alleged criminal record." *Id.* at ¶ 27.  Even so, IDJJ kept Boykin's alleged criminal record in his personnel records.  *Id.* at ¶ 28.  IDJJ did not reinstate Boykin.  *Id.* at ¶¶ 29, 31.

In the meantime, word spread about the sexual misconduct.  At some point, "Boykin's co-workers and at least one retired IDJJ employee became aware that IDJJ determined Boykin committed sexual misconduct, even though it was false."  *Id.* at ¶ 25.

Boykin sued IDJJ, as well as Hurley and Idowu in their individual capacities.  *See generally* Cplt. (Dckt. No. 1).  Boykin amended his complaint twice in response to motions to dismiss.  *See generally id.*; 12/24/23 Mtn. to Dismiss (Dckt. No. 18); First Am. Cplt. (Dckt. No. 22); 3/15/24 Mtn. to Dismiss (Dckt. No. 29); Second Am. Cplt. (Dckt. No. 35).

The operative complaint includes three claims.

Count I alleges that IDJJ violated section 504 of the Rehabilitation Act of 1973 by discriminating against Boykin on the basis of disability and refusing to accommodate his disability.  *See* Second Am. Cplt., at ¶¶ 32–39 (Dckt. No. 35).  Count II alleges that Hurley and Idowu violated section 1983 by depriving Boykin of due process and causing him a "stigma-plus" injury related to the sexual misconduct allegations.  *Id.* at ¶¶ 40–49.  Count III alleges that

IDJJ violated the FMLA by interfering with Boykin's exercise of his rights and retaliating against him. *Id.* at ¶¶ 50–56.

IDJJ moved to dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

## Analysis

Before diving in, the Court must address whether there is a need to dive into the merits at all.

Boykin did file a response to the motion to dismiss. But the response is bare bones. It offers little more than legal conclusions. *See generally* Pl.'s Resp. (Dckt. No. 39). Boykin fails to grapple in a substantive way with the arguments in IDJJ's motion to dismiss.

The response brief is only four pages long. Putting that in perspective, you're reading the sixth page of this opinion.

The analysis spans only six paragraphs. Boykin devoted only two paragraphs to each claim. *Id.* For the most part, Boykin restated the elements of each claim, and then asserted that the complaint stated a claim. *Id.* There wasn't much else.

Boykin skipped over some significant issues, too. He did not address IDJJ's exhaustion argument. He also skipped over IDJJ's argument that federal law required his dismissal.

Judges aren't known for expressing disappointment with short briefs. But a response that is only four pages long is pushing the limits.

The judiciary depends on the adversarial system. District court judges have enough on their plates, and do not have the bandwidth to construct arguments for one side of the other. The litigants must carry the load. When one side of the equation doesn't fully engage, the adversarial process breaks down.

The duty to engage has a special resonance for a plaintiff. After all, the plaintiff is the one who walked into the federal courthouse in the first place.

A failure to engage has consequences. "Long-standing under our case law is the rule that a person waives an argument by failing to make it before the district court." *Disc. Inn, Inc. v. City of Chicago*, 72 F. Supp. 3d 930, 933 (N.D. Ill. 2014) (quoting *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011)), *aff'd*, 803 F.3d 317 (7th Cir. 2015). This rule applies "where a party fails to develop arguments related to a discrete issue, and . . . where a litigant effectively abandons the litigation by not responding to alleged deficiencies[.]" *See Disc. Inn.*, 72 F. Supp. 3d. at 934 (citations omitted).

Similarly, "failure to respond to an opposing party's argument implies concession." *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 950 (N.D. Ill. 2010) (collecting cases); *see also ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp.

3d 1043, 1050 (N.D. Ill. 2017) ("Failure to respond to an argument in a motion to dismiss permits an inference of acquiescence to the argument which acts as a waiver.").

Perfunctory responses are no better than a failure to respond. "It is well established in our precedents that skeletal arguments may be properly treated as waived." *Moore v. Dart*, 2024 WL 361240, at *9 (N.D. Ill. 2024) (quoting *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011)). In addition, "[the Seventh Circuit] has repeatedly and consistently held that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021).

Boykin filed a response, but he didn't really respond. The response is too skeletal. Merely restating the elements of a claim, pointing to the complaint, and asserting that the elements are satisfied is not enough. Simply put, Boykin's failure to respond "implies concession." *See Midwest Generation*, 768 F. Supp. 2d at 950.

The Court concludes that Boykin abandoned the claims and waived any response by failing to engage with the motion to dismiss. The complaint is dismissed on that ground.

Even so, the Court will roll up its sleeves and address the arguments on the merits. "[C]ourts generally prefer to resolve disputes on their merits instead of procedural technicalities." *See Ready v. Feeney*, 2005 WL 526886, at *2 (N.D. Ill. 2005) (quoting *Fidelity & Deposit Co. v. Ramco Indus.*, 1996 WL 392164 at *3 (N.D. Ill. 1996)); *see also Coleman v. United States*, 79 F.4th 822, 828 (7th Cir. 2023) (describing the preference for "resolving disputes on their merits" expressed in the Federal Rules of Civil Procedure).

After taking a look at the claims, the Court lands in the same place. The complaint fails to state a claim.

I.      **Section 504 (Count I)**

The first claim is a discrimination claim under Section 504 of the Rehabilitation Act of 1973.

Boykin alleges that IDJJ discriminated against him on the basis of disability.  *See* Second Am. Cplt, at ¶ 33 (Dckt. No. 35).  He argues that his rotator-cuff injury constitutes a disability because it "affects major life activities."  *Id.*  Boykin also claims that IDJJ "decided to suspend [him], accuse him of a sex crime and force him to resign" rather than accommodate his disability. *Id.* at ¶ 34.

IDJJ moves to dismiss on two grounds.  This Court needs to reach only the first one.

IDJJ argues that Boykin fails to state a claim under section 504 of the Rehabilitation Act because the complaint fails to allege a disability.  *See* Defs.' Mem., at 4 (Dckt. No. 37).  The Court agrees.

"To establish a *prima facie* case under the Rehabilitation Act, [a plaintiff] must prove that she (1) falls within the ADA's statutory definition of 'disabled,' meaning that she has a 'physical or mental impairment that substantially limits a major life activity, a record of such impairment, or [is] regarded as having such impairment;' (2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision because of the disability."  *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (citations omitted).

The first element is the existence of a disability.  The statute defines the term "disability" to mean "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  *See* 42 U.S.C. § 12102(1).

A physical impairment isn't enough.  The impairment must "substantially limit[] one or more major life activities of such individual."  *See* 42 U.S.C. § 12102(1)(A).  That requirement applies across the board to all three parts of the definition, as revealed by the use of the phrase "such an impairment."  *See* 42 U.S.C. § 12102(1)(B), (C).

IDJJ argues that Boykin has failed to allege a disability.  To be sure, the complaint does allege that Boykin suffered from shoulder problems.  He has a rotator-cuff injury, which led to three surgeries.  *See* Second Am. Cplt., at ¶ 14 (Dckt. No. 35).

The complaint alleges that "Boykin took several medical leaves from work to accommodate his disability, and was on disability leave multiple times."  *Id.* at ¶ 16.  The complaint even gives a bottom-line conclusion, alleging that "Plaintiff has a disability . . . ."  *Id.* at ¶ 33.

The complaint does allege that Boykin suffers from a problem with his shoulder.  A physical injury can be a disability.  But not every physical injury is a disability.

A physical impairment counts as a disability only if it substantially limits a major life activity.  And here, the complaint includes no such allegation.

A plaintiff needs to do more than merely allege a physical problem to state a Rehabilitation Act claim.  The plaintiff must allege some impairment of major life activities. *Compare Homeyer v. Stanley Tulchin Assocs.*, 91 F.3d 959, 961 (7th Cir. 1996) (reversing a dismissal where the plaintiff "alleged that her physical condition (chronic severe [allergies]) substantially impaired her ability to breathe and that her condition, when aggravated by [secondhand smoke], substantially limited her ability to work"), *with Jackson v. Nw. Univ. Sch. of Law*, 2010 WL 5174389, at *3 (N.D. Ill. 2010) ("Plaintiff also fails to adequately allege that she is disabled.  She does not plead what her disability is or how it substantially limits one or more

major life activities.  She simply makes the conclusory statement that it does.  She has not

alleged that her disability 'negatively affect[s] [major life activities like] her capacity to learn, to

work, to sleep, care for herself or engage in physical activities, such as walking.'" (citation

omitted)), *and LeRoy v. Ingalls Mem'l Hosp.*, 2021 WL 4264360, at *4 (interpreting *Jackson* as

"holding that a conclusory allegation of 'disability,' without more, cannot withstand a motion to

dismiss a claim under the Rehabilitation Act"), *and Myers v. Muncie City Police Dep't*, 2021 WL

2690090, at *10 (S.D. Ind. 2021) ("Courts have consistently dismissed ADA claims where

plaintiffs fail to identify their alleged disability or fail to plead that they are limited in one or

more major life activities."), *and Cordova v. Univ. of Notre Dame Du Lac*, 2011 WL 6257290, at

*2 (N.D. Ind. 2011) (dismissing a Rehabilitation Act claim where the plaintiff offered only the

conclusory allegation that she had a covered disability and did not "allege[] that she is

substantially limited in a recognized major life activity" because "[t]he critical question in every

[ADA or Section 504] case is what was the effect of the impairment on the life of the

individual.") (quoting *Cassimy v. Bd. of Educ.*, 461 F.3d 932, 936 (7th Cir. 2006)); *see also

Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ("[P]laintiffs who 'merely parrot the statutory

language of the claims that they are pleading . . . rather than providing some specific facts to

ground those legal claims' . . . have not provided the 'showing' required by Rule 8.").

The Seventh Circuit has approved the dismissal of complaints that lack a sufficient

allegation of a disability.  In *Koty v. DuPage County*, the Seventh Circuit affirmed a dismissal

where the plaintiff had pleaded a "femoral hip impingement with torn labrum among other

medical disability."  *See* 900 F.3d 515, 519 (7th Cir. 2019).  The plaintiff alleged that driving his

assigned police vehicle aggravated the pain caused by his injury.  *Id.*  The Seventh Circuit

determined that the inability to "drive one model of vehicle" did not constitute interference with

a "major life activity," and that the plaintiff had not alleged a disability under the ADA (and by extension, the Rehabilitation Act). *Id.*

If anything, Boykin has alleged even less than the plaintiff in *Koty*. There, the plaintiff at least tried to explain how the physical condition limited an activity. But in the complaint at hand, no such attempt is anywhere to be found.

At best, Boykin has offered a conclusory allegation of a disability. But conclusory allegations do not put the ball in play. *See Iqbal*, 556 U.S. at 678.

IDJJ also moved to dismiss the claim based on a lack of exhaustion because Boykin failed to seek administrative relief within 300 days. But exhaustion is an affirmative defense.[1] And in any event, there is no need to reach that issue given the insufficiency of the complaint.

The claim under the Rehabilitation Act (Count I) is dismissed.

## II.    Section 1983 (Count II)

Next, Boykin brings a due process claim under section 1983 against Hurley and Idowu in their individual capacities. *See* Second Am. Cplt., at ¶¶ 40–49 (Dckt. No. 35).

The complaint alleges that Hurley and Idowu deprived Boykin of his "property interest in his employment without due process of law." *Id.* at ¶ 42. His termination process lacked "appropriate procedural safeguards, including notice and an opportunity to respond to the allegations against him." *Id.* at ¶ 43. The complaint also alleges that Hurley and Idowu "constructively discharged" him and "forc[ed] [him] to resign. *Id.* at ¶¶ 26, 44–45.

Boykin's claim fails for a simple reason: he resigned.

---

[1]  The Court briefly notes that the Seventh Circuit generally considers a failure to exhaust administrative remedies to be an affirmative defense. *See Mosely v. Bd. of Educ.*, 434 F.3d 527, 533 (7th Cir. 2006). And the motion-to-dismiss stage is not the time to resolve affirmative defenses, unless the complaint defeats itself. "[M]oving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense." *See Calchi v. TopCo Assocs., LLC*, 2024 WL 4346420, at *5 n.2 (N.D. Ill. 2024) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019)).

Generally, "[a] public employee who voluntarily resigns cannot complain about a lack of due process." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010) (citing *Dusanek v. Hannon,* 677 F.2d 538, 543 (7th Cir. 1982)); *see also Hamerski v. Belleville Area Special Servs. Coop.*, 302 F. Supp. 3d 992, 999 (S.D. Ill. 2018) (same); *Ulrey v. Reichhart*, 941 F.3d 255, 261 (7th Cir. 2019) ("If [the defendant] had tried to fire [the plaintiff], these procedural [due process] protections would have been available to her. [The plaintiff] did not invoke these procedural protections because she resigned. The general rule is that an employee who resigns – voluntarily relinquishing her interest in continued employment – may not complain of a lack of due process.") (citing *Palka*, 623 F.3d at 453). Generally speaking, an employee who voluntarily walks away cannot complain about a lack of process that he could have received if he had stayed.

Boykin resigned. *See* Second Am. Cplt., at ¶¶ 2, 22, 26 (Dckt. No. 35). Ordinarily, the resignation would mean that Boykin cannot bring a due process claim.

But exceptions apply if a resignation is involuntary. "[A]n 'involuntary' resignation may in certain circumstances form the basis of a due-process claim." *Id.* (quoting *Dusanek*, 677 F.2d at 543). The Seventh Circuit recognizes two forms of involuntary resignation: "constructive discharge and coerced resignation." *Id.* (citing *Patterson v. Portch*, 853 F.2d 1399, 1405–06 (7th Cir. 1988)).

This Court will address each of the two exceptions.

## A.     Constructive Discharge

The first possibility is constructive discharge. "Constructive discharge occurs when an employer makes employment so unbearable that an employee resigns." *Palka*, 623 F.3d at 453. That's a high standard.

"A constructive discharge can result from a hostile work environment only if the environment is 'even more egregious than that needed for a hostile work environment.'" *Ulrey*, 941 F.3d at 262 (quoting *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010)). A plaintiff must show "that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).

The complaint uses the phrase "constructive discharge." *See* Second Am. Cplt., at ¶ 44 (Dckt. No. 35). But a raw conclusion isn't enough. The complaint does not include any allegations that could rise to the level of a hostile work environment.

The Seventh Circuit has recognized constructive discharge in a few cases that involved extreme conduct. One case involved "harassment [that] include[d] repeated use of [a] noose and implied threats of physical violence." *Chapin*, 621 F.3d at 679 (citing *Porter v. Erie Foods, Int'l, Inc.,* 576 F.3d 629, 640 (7th Cir. 2009)). Another case involved a supervisor who brandished a firearm and held it to the plaintiff's head. *See Taylor v. W. & S. Life Ins. Co.,* 966 F.2d 1188, 1198–99 (7th Cir. 1992). The complaint at hand does not allege anything in the same ballpark.

At best, the complaint includes a cryptic sentence saying that "Hurley and Idowu . . . made determinations and disseminated information regarding Plaintiff's alleged criminal background that were used to justify Plaintiff's suspension and constructive discharge." *See* Second Am. Cplt., at ¶ 44 (Dckt. No. 35). Simply saying that Hurley and Idowu "disseminated information" about Boykin's criminal background does not say very much.

Some cases have recognized that an employer's communication to an employee about an impending termination *might* establish a constructive discharge. *See, e.g.*, *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 502 (7th Cir. 2010) (quoting *Fischer v. Avanade, Inc.,* 519

14

F.3d 393, 409 (7th Cir. 2008)) ("When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct *may* amount to constructive discharge.") (emphasis added); *Chapin*, 621 F.3d at 679 (similar).

The complaint alleges that IDJJ told Boykin that he would be terminated, but gave him an opportunity to resign. *See* Second Am. Cplt., at ¶¶ 22, 26 (Dckt. No. 35). True, that conversation "communicated to a reasonable employee that [he would] be terminated." *See Kodish*, 519 F.3d at 409.

But standing alone, telling an employee about an impending termination is not enough for constructive discharge. It still requires a showing of intolerable working conditions. "This form of constructive discharge . . . does not eliminate the need for the plaintiff to show that his working conditions had become intolerable." *Chapin*, 621 F.3d at 679 (citations omitted).

The complaint does not allege that Boykin endured "unbearable" working conditions. *See Palka*, 623 F.3d at 453. So Boykin cannot avail himself of the constructive-discharge exception.

### B.    Coerced Resignation

The other possible exception involves a coerced resignation. "[C]oerced resignation is characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges." *Palka*, 623 F.3d at 453.

Boykin argues that his resignation was "forced." *See* Second Am. Cplt., at ¶¶ 2, 22–23, 26, 45 (Dckt. No. 35). He alleges that IDJJ told "[him] and his union that he would be terminated," and that he "had no choice to remain employed and that he needed to immediately

resign." *Id.* at ¶ 22. Boykin alleges that he had no choice but to resign because he "fear[ed] he would lose his pension based on IDJJ's threats and pressure to resign." *Id.* at ¶ 26.

But that's not enough. The complaint does not allege a coerced resignation. Boykin alleges nothing so severe as, for example, facing threatened criminal charges. *See generally* Second Am. Cplt. (Dckt. No. 35). That is, no one threatened Boykin with possible criminal charges if he refused to resign.

Boykin faced a choice similar to the choice faced by the plaintiff in *Palka*. There, the plaintiff "could retire with full benefits or appear before the Board and potentially be vindicated; the latter option, however, obviously risked termination and loss of his benefits if the charges were substantiated." *Palka*, 623 F.3d at 453.

The Seventh Circuit held that such a choice – resign, or potentially lose pension benefits – did not constitute a coerced resignation. It is "not the kind of choice that makes an otherwise voluntary resignation involuntary." *Palka*, 623 F.3d at 453. The fact that the employee "decided to resign rather than risk an unfavorable [pension outcome] does not make his resignation involuntary." *Id.*

The same conclusion applies here. Boykin might have lost his pension benefits if he had stayed put and fought the suspension and any forthcoming termination. But the potential loss of benefits, standing alone, does not amount to a coerced resignation.

## C. "Stigma-Plus"

Boykin's due process claim includes one additional theory of recovery, above and beyond the theory about the lack of process before he resigned.

The complaint alleges that Hurley and Idowu caused a so-called "stigma-plus" injury. *See* Second Am. Cplt., at ¶ 47 (Dckt. No. 35). Boykin claims that "the stigma of the false

16

accusations was coupled with the tangible loss of employment, thus damaging Plaintiff's reputation and ability to pursue his chosen career." *Id.*

A "stigma-plus" injury is an injury to an individual's liberty interest "to pursue a calling or occupation." *See Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024) (quoting *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010)). Boykin alleges that Hurley and Idowu impaired his liberty interest by damaging his reputation.

To state a "stigma-plus" claim, Boykin must show that "(1) the defendant made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *See Palka*, 623 F.3d at 453 (quoting *Townsend v. Vallas*, 256 F.3d 661, 669–70 (7th Cir. 2001)).

The complaint falls short of alleging the second and third elements.[2]

The complaint does not allege any public disclosure. At best, the complaint alleges that "co-workers and at least one retired IDJJ employee *became aware* that IDJJ determined [Boykin] committed sexual misconduct." Second Am. Cplt., at ¶ 24 (Dckt. No. 35) (emphasis added). The complaint stops short of alleging that Hurley and Idowu were the source of knowledge by the other employees. So the Court has no reason to assume that Hurley or Idowu publicly disclosed any stigmatizing comments.

In short, Boykin has failed to allege that Hurley or Idowu made any public comments about the DCFS allegation. He has only alleged that others "became aware" of this finding. *Id.* at ¶ 24 (Dckt. No. 35).

---

[2] The first element is the existence of stigmatizing comments. One wonders if repeating an allegation of misconduct by a public body could constitute stigmatizing comments. The parties don't address it, so the Court won't reach it.

The complaint also fails to allege that Boykin has "suffered a tangible loss of other employment opportunities as a result of the public disclosure." *See Palka*, 623 F.3d at 453. Boykin states that he "retired years earlier than planned, and has suffered humiliation, job loss and other emotional and financial damages." *See* Second Am. Cplt., at ¶ 30 (Dckt. No. 35). He alleges that the forced resignation has "damag[ed] [his] reputation and ability to pursue his chosen career." *Id.* at ¶ 47.

An early retirement is insufficient to show a "stigma-plus" injury, even if it causes an economic loss. A "stigma-plus" injury requires "permanent exclusion from or protracted interruption of employment" – in other words, a real interference with someone's liberty interest to pursue their chosen profession. *See Martin*, 94 F.4th at 672. Boykin has not alleged anything close to a permanent exclusion, let alone one caused by a public disclosure.

Boykin's claim under section 1983 (Count II) is dismissed.

## III.   Family and Medical Leave Act (Count III)

The last claim falls under the Family and Medical Leave Act.

The complaint alleges that IDJJ "unlawfully interfered with Boykin's FMLA rights by taking adverse employment actions against him, including suspension, retaliation and forced resignation, for exercising his right to take FMLA leave." *See* Second Am. Cplt., at ¶ 54 (Dckt. No. 35). In other words, Boykin alleges both interference with, and retaliation for, exercising his FMLA rights.

### A.   FMLA Interference

The first theory is that IDJJ interfered with the exercise of his rights under the FMLA.

The statute makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *See* 29 U.S.C.

18

§ 2615(a)(1).  An interference claim has five elements:  "(i) the employee was eligible for FMLA protections; (ii) the employer was covered by the FMLA; (iii) the employee was entitled to leave under the FMLA; (iv) the employee provided sufficient notice of intent to take FMLA leave;" and (v) the "employer denied or interfered with FMLA benefits to which [the employee] was entitled."  *See Ziccarelli v. Dart*, 35 F.4th 1079, 1084 (7th Cir. 2022) (cleaned up), *cert. denied,* 143 S. Ct. 309 (2022).

An interference claim is forward-looking.  An employee must provide "notice" of an "intent to take" leave under the FMLA.  *Id.*  And the employer must deny or interfere with the right to take that leave.

The complaint at hand alleges no such thing.  Boykin does not allege that he gave notice of his intent to take FMLA leave, and that IDJJ turned him down.  Quite the opposite.  Boykin alleges that he took his FMLA leave, and then returned to work.

"Around October 18, 2021, *after taking a medical leave* from IDJJ to treat his disability and receiving pressure from IDJJ to return to work as soon as possible, Boykin returned to work on the Premises and requested 'light duty.'"  *See* Second Am. Cplt., at ¶ 18 (Dckt. No. 35) (emphasis added).

Boykin doesn't allege that IDJJ stood in the way when he tried to take medical leave.  Instead, he alleges that he took medical leave, and something bad happened when he returned.

The complaint does not allege that IDJJ learned about the alleged sexual misconduct, and *then* denied his request for medical leave.  In any event, any such allegation would face an uphill battle.  In *Nicholson v. Pulte Homes Corporation*, the Seventh Circuit "affirm[ed] summary judgment [against] the plaintiff's FMLA interference claim where the employee asked for leave after the termination decision had already been made."  *See Guzman v. Brown County*, 884 F.3d

633, 640 (7th Cir. 2018) (citing *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012)).

If Boykin had instead notified IDJJ of his need for FMLA leave *after* the news of his sexual misconduct broke, then the third (and, by extension, the fifth) element would not be satisfied. It's not at all clear that Boykin "was entitled to leave under the FMLA" once DCFS returned its report of sexual misconduct. *See Ziccarelli*, 35 F.4th at 1084. As IDJJ points out, it was arguably required to terminate Boykin upon learning of his alleged sexual misconduct. *See* Defs.' Mem., at 9 (Dckt. No. 37).

Alternatively, IDJJ likely could have terminated Boykin for the alleged sexual misconduct, even if he had already started FMLA leave. *Id.* (quoting *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 750 (7th Cir. 2009)) ("[A]n employer may terminate employees – even when on leave – if the employer discovers misconduct that would justify termination had leave not been taken.").

But, again, Boykin does not allege that IDJJ prospectively blocked him from taking leave that he *intended* to take (and gave notice that he was going to take). Simply put, Boykin cannot show an interference with his right to take FMLA leave.

In sum, the complaint fails to allege an interference claim under the FMLA.

**B.     FMLA Retaliation**

Boykin also alleges that IDJJ fired him in "retaliation" for "exercising his right to take FMLA leave." *See* Second Am. Cplt., at ¶ 54 (Dckt. No. 35).

An employee "can state a claim for retaliation by alleging: (1) he exercised or attempted to exercise rights protected under the FMLA; (2) he suffered an adverse employment action;" and (3) causation. *Bucks v. Mr. Bults, Inc.*, 218 F. Supp. 3d 776, 779 (S.D. Ill. 2016); *Ames v.*

*Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011); *de la Rama v. Illinois Dep't of Hum. Servs.*, 541 F.3d 681, 686 (7th Cir. 2008); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).

Here, the first and second elements of the FMLA retaliation claim are not in doubt. Boykin took FMLA leave before returning to work in October 2021. *See* Second Am. Cplt., at ¶¶ 18–19 (Dckt. No. 35). And he suffered an adverse employment action when he was suspended and given the opportunity to resign. *Id.* at ¶ 20, 22.

Only the third element, causation, is at issue. IDJJ argues that Boykin has failed to allege sufficient facts about causation. *See* Defs.' Mem., at 11 (Dckt. No. 39).

In response, Boykin says almost nothing. He offers a raw conclusion. "Plaintiff alleges that his attempts to utilize FMLA protections were met with retaliation, culminating in his forced resignation." *See* Pl.'s Resp., at 4 (Dckt. No. 37).

A plaintiff can demonstrate causation in two different ways: the direct method and the indirect method. To proceed under the direct method, a plaintiff must directly show that "there is a causal link between the protected activity and the adverse employment action." *Bucks*, 218 F. Supp. 3d at 779. To proceed under the indirect method, a plaintiff must show that "only [the plaintiff], and not any similarly situated employee who did not exercise rights protected by the FMLA, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Id.*

Boykin's statement does not suffice under either method.

Under the direct method, "a plaintiff must [plausibly allege] that 'the protected conduct was a substantial or motivating factor in the employer's decision.'" *See Maier v. United Parcel*

*Serv., Inc.*, 721 F. Supp. 3d 693, 727 (N.D. Ill. 2024) (quoting *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901–02 (7th Cir. 2018)).

Boykin alleges nothing of the sort. The complaint does not include any facts that could give rise to a plausible inference of causation. Apart from the timing, the complaint offers little connection between the medical leave and the adverse employment action. "[T]emporal proximity on its own is generally not enough to show a causal link." *See Bucks*, 218 F. Supp. 3d at 781 (citing *Buie*, 366 F.3d at 506).

And here, the complaint alleges an intervening event: IDJJ discovered information that Boykin was charged with a sexual offense against a minor. "Upon Boykin's return to work, after decades of employment with a clear background check, IDJJ human resources ran a background check on Boykin on October 19, 2021 and suddenly alleged Boykin committed a sexual crime in 1995." *See* Second Am. Cplt., at ¶ 19 (Dckt. No. 35).

Viewed as a whole, the allegations do not give rise to a plausible inference that the FMLA leave was a "substantial or motivating factor" behind the adverse employment action. *See Maier*, 721 F. Supp. 3d at 693.

At best, Boykin alleges that he took FMLA leave, and that the IDJJ took action against him a few days later. Apart from the timing, the complaint offers no factual basis to connect the dots, especially given the discovery of a charge of sexual abuse. So the complaint does not allege causation under the direct method.

Under the indirect method, a plaintiff must allege that he suffered an adverse employment action "even though he was performing his job in a satisfactory manner." *See Bucks*, 218 F. Supp. 3d at 781.

22

The complaint's allegations do not satisfy that standard. Boykin does not point to any similarly situated employees. He doesn't even allege that any similarly situated employees exist. He does not allege satisfactory performance, either, except in conclusory terms.

Boykin worked with young people. He performed sensitive tasks, like engaging in "strip searches" and overseeing "showering of juveniles." *See* Second Am. Cplt., at ¶ 21 (Dckt. No. 35). That type of job creates an expectation that the employee will be able to handle such tasks appropriately.

IDJJ learned that Boykins was charged with a sexual crime. That allegation called into question his ability to perform sensitive tasks with young people. Given that reality, the complaint does not allege sufficient facts to give rise to a plausible inference that Boykin was performing his job satisfactorily.[3] So the complaint does not allege causation under the indirect method.

The claim under the FMLA (Count III) is hereby dismissed.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is hereby granted.

Date: February 27, 2025

_____
Steven C. Seeger
United States District Judge

---

[3] IDJJ flips the script, arguing that federal law required Boykin's dismissal. IDJJ points to regulations under the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq.* A correctional agency like IDJJ "shall not hire or promote anyone . . . who . . . [h]as been civilly or administratively adjudicated to have engaged in" sexual activity "if the victim did not consent or was unable to consent or refuse." *See* 28 C.F.R. § 115.17(a)(2)–(3). "Material omissions regarding [sexual] misconduct, or the provision of materially false information, shall be grounds for termination." *See* 28 C.F.R. § 115.17(g). Maybe IDJJ is right, but this Court does not need to reach that issue.

23